## Cartwright, Appellant, *v.* Carpenter *et al.*

Where a landlord showed a workman the contract with his tenant, and represented
   that there were certain repairs, which by that contract the tenant was bound to
   make, and authorized the workman to do the same and look to the tenant' for pay-
   ment, which was accordingly done; but in a suit for compensation, the tenant
   proved that he left the premises in as good a condition as he found them ; held, the
   landlord was liable to the workman for the repairs,

A judgment is evidence when one of the litigants is an actual, and the other a con-
   structive party thereto by notice, when the rights of the latter may ultimately be
   affected by such judgment.

It seems there is some conflict of authority whether a judgment between an actual
   and constructive party is conclusive, or only *prima facie,* when simply offered as
   evidence.

The assignee of an unfounded claim, or falsely represented contract, may recover of
   the assignor the costs expended by him in the prosecution of such claim.

The statute of jeofails of this state provides that no judgment after verdict shall be re-
   versed for any mistake or misconception of the form of action.

Where the court instructed the jury that a record was conclusive of a fact, but there
   was other and sufficient proof to the same point, and it appeared that justice had
   been done, the appellate court refused to award a new trial.

APPEAL from the circuit court of the county of Adams.

This was an action of assumpsit.   It appeared that S. A. Cart-
wright, the appellant, about the year 1834, leased his house and
lot in Natchez to one Rowan, by indenture under seal, in which
Rowan, among other things, covenanted to leave the premises in
as good repair as he received them.   After the expiration of the
lease, one of the appellees who were the plaintiffs below, applied
to Cartwright for a job of work; he showed him the agreement
between Rowan and himself, and informed him that the house
had not been repaired according to the contract.   He also told him
that he was about to exchange the house for another, but that
neither he nor Mrs. Wren, with whom he was about to make the ex-

change, was willing to pay for the repairs: but if Carpenter chose to repair the house and look to Rowan for payment, he could do so, and he would give him the benefit of the agreement with Rowan. At another interview he showed Carpenter the injuries the house had sustained while Rowan had occupied it, and again stated to him that if he chose to repair the house, he must do it under the faith of the agreement, and look to Rowan for his pay, in the same manner as if Rowan had employed him. The plaintiffs soon afterwards went to work on the house, before Cartwright made the exchange. They completed the work, and as they were not paid for it, a suit was brought against Rowan, in the name of Cartwright, upon the agreement for their benefit. Cartwright gave the agreement to the lawyer to be sued on, but informed him it was for the benefit of the plaintiffs. They informed him what witnesses to summon, and he believes it was understood by all parties that the suit was for their benefit. That suit terminated in favor of Rowan, because, according to the testimony of Mr. Gaines, who brought and conducted it, "it appeared in proof upon the trial that Rowan left the premises in as good condition at the termination of the lease as they were at its commencement." After the end of that suit, the Carpenters brought an action for their account against Wren, who exchanged houses with Cartwright, and they were again defeated. This suit was then instituted. The defendant pleaded non assumpsit and payment, and under the latter plea offered in evidence as a set off an account for costs which he had paid in the suit against Rowan, alleging that though the suit was in his name it was for their benefit, and that they were liable for the costs.

Mrs. Wren, a witness, stated on the trial that one of the plaintiffs, before the work was commenced, read the agreement with Rowan, and was told by Dr. Cartwright, in her presence, that if he did the work he must look to Rowan alone for payment. The plaintiff agreed to do this. Rowan was examined as a witness, and stated that he left the place in as good repair as he received it.

The court instructed the jury, on request of the plaintiffs' counsel:

1. If the defendant falsely represented that the repairs to be

made were such as were necessary to put the house in as good repair as when received, he would be liable for the work.

2. The verdict, &c. in favor of Rowan, is conclusive that Rowan was not liable for the repairs charged for in said suit.

3. That Carpenter is not liable for the costs of the suit brought by Cartwright against Rowan, unless he consented to the prosecution of it, and such costs are no offset.

4. When a carpenter does a job of work for any person, with his knowledge and consent, the law implies a promise to pay for it. Express promise need not be proved.

5. A contract to pay for work, &c. may be implied from the fact, that it was done for defendant with his knowledge.

6. If the jury believe that Rowan was not bound to make the repairs, then the transfer of the lease, or bringing suit on it for Carpenter's benefit, was no payment.

To all of which instructions defendant excepted. The court also, at defendant's request, instructed the jury:

1. That if the defendant never agreed to pay the plaintiff for the work, he cannot recover in this form of action.

2. If the plaintiffs relied on Rowan's lease alone, and defendant gave them the use of it accordingly, the plaintiffs are not entitled to recover.

3. If the repairs were made after the title passed to Mrs. Wren, Cartwright is not liable in this form of action, unless he agreed to pay for them.

4. If there is a balance due the defendant, the jury must certify it.

5. If Carpenters agreed to rely solely on the chances of a recovery on the lease, Cartwright is not liable.

The first exception taken was to the giving the instructions in favor of plaintiffs.

The second exception was to the refusal of the court to grant a new trial.

QUITMAN and McMURRAN, for appellant.

The first error assigned is, the exception taken by plaintiff in error to the instructions given by the court below at the instance of defendants in error. This error necessarily involves the

question as to the correctness of each of the five instructions asked on the part of plaintiffs below.

The first instruction given was, that if the work was done on the false representation of Cartwright, he was liable in this action for the work done. This instruction, we insist, was erroneous. The action being *indebitatus assumpsit* for work and labor, the false representation created no privity, no contract or assumpsit express or implied; and no recovery could be had in this case upon such a state of acts. The only remedy would be an action in the case for deceit or false representation. 14 Wend. 126; 7 do. 9. So, the opinion of this court in the case of Nicholas O'Connelly *v.* The City of Natchez, deciding that the tort could not be waived and an action of *indebitatus assumpsit* maintained. The case now before the court is still stronger. It shows by the testimony of Mrs. Wren, than when the work was done, Cartwright had no interest whatever in the property, that it belonged alone to her.

The second instruction, we insist, is also erroneous, namely, that the verdict and judgment in favor of Rowan in the suit of Cartwright against him is conclusive evidence that Rowan was not liable for the repairs charged for in this suit. Now the instruction is entirely too broad. We admit that in any controversy between Cartwright and Rowan it would be conclusive, or between the plaintiffs and Rowan, if they were beneficially the parties, as we assert; it would be conclusive, if pleaded in bar, or as an estoppel. But it is not conclusive in any controversy between Cartwright and the Carpenters. 1 Phil. Ev. 320—'26, chap. 2 of Verdicts and Judgments of Courts of Record.

The third instruction of the court below excepted to by plaintiff in error is, that the costs of the suit of Cartwright against Rowan was not a proper offset in this suit. This instruction is incorrect both in substance and in form. It was shown that Cartwright had paid these costs; that was admitted, as proved on the trial. We proved by R. M. Gaines that the suit of Cartwright against Rowan was really for the benefit of the Carpenters, and prosecuted with their knowledge; and if we made out our case in proof as we contended, it was a proper and legal offset. It was so much money paid by Cartwright for the use of the Carpenters, and a fit

subject of setoff; for we insist that a setoff is available as a defence wherever *indebitatus* will lie on the same demand.

Then it was the province of the jury to determine whether it was a proper demand on the part of Cartwright as a setoff, upon the proof; but the court instruct positively, not hypothetically, instruct the jury that no matter how they may believe the testimony, no matter whether Cartwright be liable or not, the amount paid by him in the other suit cannot under any circumstances be claimed as an offset in this. In short the court in this instruction determined both the law and facts. This is unquestionably error. In the language of the Supreme Court of the United States, "this instruction manifestly assumes as its basis general questions of fact, upon which the court had no right to pronounce judgment." Douglass *et al. v.* Reynolds *et al.* 7 Pet. Rep. 113, 128.

The fourth instruction we believe to be correct. The fifth one was abstract, and irrelevant to the issue, and therefore improper. Cartwright did not plead or give in evidence his transfer of the lease to the Carpenters, or the bringing of the suit for them as a payment of the work they did under the lease, but only to show his contract, and that he had complied with it, and that he was therefore not bound in any shape for any thing to the Carpenters.

The second general error assigned is, to the decision of the court overruling the motion for a new trial. Independently of the errors contained in the instructions just reviewed, the whole testimony before the jury, and spread upon the record, shows in our opinion that the verdict ought to have been for Cartwright, and consequently that the court ought to have granted a new trial.

MONTGOMERY for appellee.

From the evidence it is plain the work was all done by the direction of the defendant, and from the evidence furnished by the verdict and judgment in the suit by Cartwright against Rowan, the testimony of Gaines that it was on the trial of that action proved that the house was left in as good repair as when it was received by Rowan, and the positive evidence of Rowan to the same effect, no other conclusion can be drawn than that it was fraudulently represented by Cartwright to Carpenter as work which Rowan was bound to perform under his agreement, and for

which he would be bound to pay if done by Cartwright. Now, if Cartwright fraudulently represented that the work which he pointed out to Carpenter to be done, was such as was required to put the house in as good repair as when Rowan received it, in consequence of which Carpenter entered into a special contract to do the work and look to his remedy on Rowan's agreement for his compensation, can any proposition be plainer than that Cartwright is bound to pay for the repairs himself? Even in a case where a person purchases goods and gives the promissory note of a third person as payment, and the note is avoided on the ground of usury, the vendor of the goods may treat the note as a nullity and bring an action for the value of the goods. 19 Johnson's Rep. 294.

At best, the agreement between Cartwright and Carpenter can only be considered an agreement to accept Rowan's obligation or undertaking to pay for the work which Cartwright directed to be done. And it is well settled that where a tradesman agrees to sell goods, &c. and take in payment the promissory note of a third person, which afterwards turns out to be worthless, the note is not considered payment, and may be treated as a nullity. 1 Wend. 17; 1 East, 3; 9 John. 310; 2 J. R. 455.

These last authorities also settle the question that *indebitatus assumpsit* is the proper remedy, notwithstanding the special contract. But it is contended that Carpenter agreed to take the risk of obtaining compensation from Rowan. The evidence, however, cannot be tortured into more than an agreement to take the risk of Rowan's ability to pay, not his liability.

Carpenter does not appear to have known any thing of the condition of the house when leased, and, from Cartwright's own statement, relied upon his representation as to the repairs required under Rowan's agreement. That Cartwright was guilty of fraud is perfectly evident from the nature of most of the repairs, as shown by the accounts; first it is shown by Rowan's testimony that the locks which were on the house had been in use thirteen years, and were of inferior quality at first; the first item of the account is for locks, which, from the price, must have been of a superior quality. Again: near one-fourth of the account is for digging a vault and brick work done on an entirely new privy.

Now, will any man in his senses believe that Cartwright did not know that these things were not embraced in the repairs agreed to be made by Rowan? But it may be discovered that, from the nature of the articles, Carpenter must also have known they were not embraced; to which we would reply that the work was required to be done by Cartwright, and was for his benefit; and Carpenter, like all other mechanics, had a right to consider it extra of the work included in the contract, and be entitled to recover accordingly. Holt, 236; 1 Starkie, 275; 4 Con. R. 564.

The plaintiffs were entitled to recover on the common law counts, because the contract was completed. 7 Cranch, 299; 4 Con. 564.

From the instructions we may infer the defendant will contend that he was not the owner of the house on which the work was done at the time it was done. But this position is not true in fact. Dr. Cartwright states that he was the owner at the time the contract was made, and was in treaty with Mrs. Wren to exchange it for one she owned; but the house being out of repair, Mrs. Wren refused to trade until the repairs were done. And when the contract was made with Carpenter, that difficulty being removed, the agreement to exchange was made.

Mrs. Wren's testimony is very nearly the same; but neither of them state when the actual exchange took place. Cartwright says it was some time after it before the titles passed. From the testimony of both, it is evident the house was to remain Cartwright's until the repairs were finished, for that was one of the conditions of the trade with Mrs. Wren. And it cannot be pretended that she was bound by the exchange until the repairs were completed.

As all the instructions asked for by defendant were given, and no harm resulted from them, it is hardly necessary to notice them; but as it may be contended on the motion for a new trial that the jury disregarded them, we will first undertake to show that they were wrongly given, and secondly, that the evidence sustains the finding notwithstanding the instructions on law.

The first instruction we admit is law, but there was abundance of evidence of an express and an implied contract: first, Cartwright did agree to pay for the work expressly, by giving the plaintiff the

benefit of an agreement under which he represented that Rowan was liable to pay him the amount of the costs of the repairs; and secondly, an implied promise from the circumstance that the work was done at his request and for his benefit.

The second instruction is clearly erroneous; for although Carpenter may have relied on Rowan's lease alone, yet if it turned out that Rowan was not liable to an action thereon, because he had performed his agreement; in consequence of which the use of it amounted to nothing, Carpenter would not thereby be deprived of a right to recover for his work and labor. But the facts justified the finding, although this charge may be considered correct, for there was no proof that Carpenter agreed to take the risk of Rowan's liability. He agreed to take the lease on Dr. Cartwright's representation and assurance that Rowan was liable.

The third instruction is not law, for if Cartwright contracted for the work and immediately conveyed to Mrs. Wren, before any of the work was done, that would not release him from his contract. But he did agree to pay for the repairs by assigning an obligation of Rowan to pay for them, which is the same as if he agreed to transfer a note of a third person.

The fourth instruction as an abstract proposition is not disputed, but as applicable to this case it is not law. What is the set-off on which the defendant claims a balance? It is a bill of costs incurred in the suit of Cartwright *v.* Rowan, which was founded on the agreement in the lease, and which was bought for the benefit of Carpenter. Now nothing can be clearer, than if Carpenter had received that lease and brought suit in his own name as assignee, and failed for the reasons stated by Gaines, he could have recovered from Cartwright not only the sum for which the lease had been assigned, but also all the costs he had paid for prosecuting the suit on it.

The fifth is inoffensive, as there is no evidence to support it. With reference to the second instruction in favor of plaintiffs, we would further remark, that it is a settled rule that a party to a suit is not only concluded by the judgment from again litigating the same matters, but is estopped by the verdict from again disputing any fact distinctly put in issue by the pleadings. 3 East's Rep. 346.

But here we are met with the objection that the record is only evidence between parties and privies, and as Carpenter was not a privy, the record is no evidence in his favor. To this we reply, that when the party against whom the record is offered as evidence, was a party to the record, it is competent evidence against him. 10 Wend. Rep. 84.

When justice has been done, the court will not grant a new trial, if the plaintiff has misconceived his form of action. 3 Douglass, 401; 1 Harrison's Dig. 149.

The statute of Jeofails is based on and intended to perfect this equitable doctrine.

Boyd on the same side.

Mr. Justice CLAYTON stated the case and delivered the opinion of the court.

Several charges were asked by the counsel of the plaintiffs to be given to the jury, four of which only seem to call for consideration.

1. If the jury believe that the defendant falsely represented that the repairs to be done on the house leased by Rowan were such as were necessary to put the house in as good repair as when Rowan received it, the defendant will be liable for the work.

2. The verdict and judgment in favor of Rowan in the suit brought by Dr. Cartwright, is conclusive evidence that Rowan was not liable for the repairs charged for in the said suit.

3. The plaintiffs are not liable for the costs of suit brought by Cartwright against Rowan, unless it is proved that they consented to the prosecution of said suit, and such costs are not a proper set-off in this suit.

6. If the jury are satisfied from the evidence that Rowan was not bound by his lease to make the repairs pointed out by Dr. Cartwright, then the transfer of such lease to Carpenter or bringing suit on it for his benefit was not payment for such repairs.

There were two other charges which, though excepted to along with these here enumerated, were too obviously correct to require any comment. They were given to the jury.

The first and sixth charges are substantially the same, and may

Cartwright, Appellant, *v.* Carpenter *et al.*

be considered in connection. They propound the simple elementary principle, that if one makes a false representation to another in reference to the subject of contract, he is bound to make the representation good. If one party suffer the other to contract for an article under a delusion created by his own conduct, it will be deemed fraudulent. The defendant showed to the plaintiffs, before the work was commenced, the injuries which he said the house had sustained from Rowan, and which he also said Rowan, by the terms of the contract, was bound to repair. The plaintiffs did the work, relying upon these representations of the defendant; but the result of the suit against Rowan proved that he was not liable. They acted under a delusion created by the defendant, and it is the part of good faith that he should make good his representations. 2 Kent, 482 *et seq.*; 5 How. 167; 4 How. 451; 1 Meigs, 157; 3 T. R. 57.

The second instruction will be next considered. The chief objection to this is, that it declared the verdict and judgment in the case against Rowan was conclusive evidence that he was not liable for the repairs. The general rule is, that a record of a judgment is evidence only between parties and privies. There is one mode, however, of making them evidence when they would not otherwise be so, by giving notice of the pendency of the suit to a third person whose rights may ultimately be affected thereby. This is applicable between vendee and vendor, assignee and assignor, and in short in all cases in which one will have a right of action for indemnity against another in the event of loss. The person thus notified becomes *quasi* a party. Kip *v.* Brigham, 6 Johns. 158; 2 Rawle, 204; 4 Howard, 246; 3 Phil. Ev. 817. This case is within the range of that principle. Cartwright was the plaintiff of record; the suit seems to have been for the benefit of the present plaintiffs. They had, at all events, full notice of it, and attended to its prosecution. Cartwright was an actual and they were constructive parties; the record is therefore evidence between them. There is some conflict in the authorities as to the question whether it was conclusive or only *prima facie*, when simply offered in evidence. The doctrine in the Duchess of Kingston's case, 11 St. Tri. 261, is, "that the judgment directly upon the point is as a plea a bar, or as evidence conclusive be-

29*

tween the same parties upon the same matter.   Two later English cases tend to fix a contrary rule, and to establish that the verdict and judgment are admissible in evidence, but not conclusive unless pleaded as an estoppel.   Trevivan *v.* Lawrence, Salk. 276; Vooght *v.* Winch, 2 Barn. & Ald. 662; 1 Phil. Ev. 321.

In this country the question has been before many of the courts. In Pennsylvania, Maryland and Tennessee it is held the verdict and judgment are conclusive, whether pleaded or offered as evidence.   In Massachusetts, Connecticut and Indiana the contrary has been held.   In Virginia and New York the decisions are both ways.   In this state, in the case of Pickett's Executors *v.* Ford, 4 Howard, 249, the record was held to be evidence, but whether conclusive or not is not decided.

We think the principle that the verdict and judgment are not conclusive, can at most only apply in those cases in which special pleading is requisite, and cannot apply to those actions in which almost every matter may be offered in evidence under the general issue.   Neither can it apply to cases in which the plaintiff's title is by estoppel, or in which the verdict and judgment are introduced by him to show his right of recovery.   See the cases collected and examined, 3 Phil. Ev. 804, 810.

But it is not necessary that this case should rest upon the conclusive character of the former verdict.   Other evidence to the same point was given, for Rowan expressly swore that he left the place in as good repair as he received it.   The whole evidence is set out in the bill of exceptions, and regarding the judgment in the other case as only *prima facie* in its character, this verdict is fully sustained by the proof.   As we think justice has been done between the parties, we are not inclined to disturb the finding, and this is in accordance with the rules of law.   Gra. New Tr. 357, 407.

The other charge is as to the costs of the suit against Rowan, which the defendant attempted to make a set-off in this case. The instruction given was as favorable for the defendant as is believed to be consistent with the law.   As the case stood, he was legally liable for the costs.   If he had sued the present plaintiffs for the amount, after having paid them, he would not be entitled to recover, because they were incurred in the prosecution of a

claim in which recovery could not be had by reason of his mis-representation.   If the present plaintiffs had been the real parties in that suit, and the costs adjudged against them, they might re-cover them of the present defendant as part of the damages sus-tained in consequence of his wrong.   An assignee may recover of the assignor the costs expended by him in the prosecution of an unfounded claim.   Butler *v.* Sluddeth, 6 Mon. 542.   The same principle comprehends this case.

The charges asked by the defendant were all given by the court; the jury were satisfied, it is to be presumed, that the facts did not exist which justified their application.

An objection is urged to the present form of action, and we have no doubt that the form was misconceived.   But our statute of jeo-fails expressly enacts, that no judgment after verdict shall be reversed for any mistake or misconception of the form of action. How. & Hutch. 591.

The judgment will therefore be affirmed.